| | |
|---|---|
| _____ ) | |
| **EPHRAIM GREENBERG,** *individually* ) | |
| *on behalf of himself, and on behalf of* ) | |
| *all others similarly situated,* ) | |
| ) | **Civil Action No. 13-1837 (RMC)** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CAROLYN W. COLVIN,** *in her official* ) | |
| *capacity as Acting Commissioner of the* ) | |
| *Social Security Administration*, **and** ) | |
| ) | |
| **THE SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## OPINION

Ephraim Greenberg asks the Court to certify a class of individuals who have had

their Old Age, Survivors, and/or Disability Insurance Benefits reduced under the Windfall

Elimination Provision of the Social Security Act because they receive Old Age Benefits from the

National Insurance Institute of Israel. Defendants do not oppose the motion for class

certification and both parties agree that the Social Security Administration should not apply the

Windfall Elimination Provision to a beneficiary who receives an Old Age pension from the

National Insurance Institute of Israel. However, Plaintiff and Defendants do not agree on the

legal bases for attorney fees for counsel to the proposed class. Plaintiff seeks attorney fees under

a provision of the Social Security Act or, alternatively, under the common benefit or common

fund doctrine. Defendants argue that Plaintiff's counsel is entitled only to attorney fees under

the Equal Access to Justice Act. Because the terms and implementation of any settlement

agreement depend upon the resolution of the fee dispute, the parties seek a ruling on the question now.

The consent motion to certify the class under Federal Rule of Civil Procedure 23(b)(3) will be granted. The Court also will grant Plaintiff's motion seeking a determination that counsel is entitled to attorney fees under the fee provision of the Social Security Act, 42 U.S.C. § 406(b).

## I.    FACTS

### A.  The Windfall Elimination Provision and National Insurance Institute of Israel Old Age Benefits

This case involves a statutory provision implemented by the Social Security Administration (SSA), known as the Windfall Elimination Provision (WEP), 42 U.S.C. §§ 415(a)(7), (d)(7), 20 C.F.R. § 404.213(a). Pursuant to WEP, SSA reduces a beneficiary's Old Age, Survivors, and/or Disability Insurance Benefits (OASDI Benefits or SSA Benefits) in instances where, for the same months that a claimant is entitled to SSA Benefits, that claimant is also entitled to a monthly pension "based in whole or in part on [ ] earnings in employment which was not covered under Social Security." Compl. [Dkt. 1] ¶ 24 (quoting 20 C.F.R. § 404.213(a)). SSA's regulations also provide that "[p]ensions from noncovered employment outside the United States include pensions from social insurance systems that base benefits on earnings but not on residence or citizenship." Id. ¶ 25 (quoting 20 C.F.R. § 404.213(a)).

SSA applied WEP to reduce OASDI Benefits in cases where recipients also receive Old Age benefits from the National Insurance Institute of Israel (NII Old Age benefits). NII Old Age benefits are guaranteed to all residents of Israel who have reached a certain age,

subject to residency requirements and payment into the system for a minimum time period.[1] "Neither entitlement to the benefits, nor the amount of benefits to which an individual is entitled, is dependent on the individual's work history or prior earnings (if any)." *Id.* ¶ 2. Thus, even if an otherwise qualified resident of Israel has never been employed or collected earnings, s/he may satisfy the criteria and be entitled to NII Old Age Benefits.

Several years prior to the filing of the Complaint in this case, SSA applied WEP to reduce the retirement benefits of Rabbi Jerome Berger because he received NII Old Age benefits. In 2001, Rabbi Berger appealed SSA's determination and then filed suit in this Court. *See Berger v. Barnhart*, No. 04-0431 (D.D.C. 2004)).[2] While the *Berger* suit was pending, SSA sought a remand to the agency. On September 3, 2004, the SSA Appeals Council determined that Rabbi Berger's Israeli pension did not trigger WEP because, for qualified individuals, NII Old Age benefits are based solely on residency status and payments into the NII system, but not on earnings. The Appeals Council further directed SSA to recalculate Rabbi Berger's social security benefits without regard to his NII benefits.

In 2005, Martin H. Gerry, Deputy Commissioner for Disability and Income Stability Programs for SSA, responded to an inquiry from Mordechai Biser, Associate General Counsel for Agudath Israel of America, concerning the *Berger* case. Mr. Gerry wrote:

> On remand, [SSA] found that we had incorrectly applied the WEP to Mr. Berger's benefits because the NII pension is based on residency in Israel, not on employment that was not covered by the U.S. Social Security system. . . .

---

[1] For a complete description of the specific requirements, *see* NII's Old Age benefits "Conditions of Entitlement," available at: http://www.btl.gov.il/English%20Homepage/Benefits/Old%20Age%20Insurance/Conditions/Pages/default.aspx (last visited Aug. 5, 2014).

[2] The law firm of Kelley Drye represented Rabbi Berger and now represents Plaintiff in this action.

> We agree that other beneficiaries who are also receiving the NII pension may have had the WEP erroneously applied and that we should recalculate the current benefit amounts of all such beneficiaries and pay any back benefits due. We have begun the process of identifying such persons in our files, and we will take appropriate actions to correct any misapplication of the WEP.

Compl. ¶ 36. However, SSA continued to apply WEP to the SSA Benefits of individuals who also receive NII Benefits.

### B. Plaintiff's Complaint and the Parties' Settlement Agreement

On November 21, 2013, Plaintiff filed a class action complaint alleging that Defendants repeatedly and unlawfully applied WEP to reduce his and other similarly situated claimants' SSA Benefits based on their receipt of NII Old Age benefits. Plaintiff alleges that his SSA Benefits should not be subject to WEP reduction.

Soon after Plaintiff filed his Complaint, the parties began settlement discussions. They filed a joint status report on April 2, 2014, stating that they had reached a partial resolution of Plaintiff's claims on a class-wide basis and that both parties agreed that SSA should not apply WEP to a beneficiary who receives a NII Old Age pension. They reported that SSA had agreed to take the following actions: (1) rescind the practice of applying WEP to NII Old Age benefits; (2) recalculate all Social Security benefits where WEP had been applied because a beneficiary received NII Old Age benefits; and (3) pay all benefits that would have been paid had WEP not been applied. After the final settlement terms are reviewed and approved by the Department of Justice, the parties have agreed to submit the settlement agreement to the Court for approval.

### C. The Proposed Class Definition

Plaintiff seeks class certification under Federal Rule of Civil Procedure 23(b)(2) or 23(b)(3) of a class that is comprised of: "All beneficiaries (including their estate or heir(s) as

applicable) whose OASDI Benefits payment(s) were reduced since September 3, 2004 through application of WEP based on their receipt of Old Age Benefits from NII." *Id.* Plaintiff states:

> In this definition:
>
> "Beneficiary" or "beneficiaries" means a person or persons, or his/her Representative Payee(s) as provided under the Act who has received or is receiving OASDI Benefits payment(s), or, if such person(s) or Representative Payee(s) is (are) dead, the estate of such person(s) or Representative Payee(s).
>
> "Representative Payee" means a person who has been selected or appointed to receive payments on behalf of any Beneficiary of OASDI Benefits payment pursuant to the Act and its regulations.
>
> "Reduced" refers to a reduction in an OASDI Benefits payment, as well as any determination that an OASDI Benefits overpayment was made by SSA and that the recipient would have to repay the overage and/or that the overage would be subtracted from OASDI Benefits payment(s) or other benefits.

*Id.* SSA estimates that the size of the class is no more than 1,666 individuals.

## II.    CLASS CERTIFICATION

### A.  Legal Standards

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "A class may be certified for settlement purposes only, and such 'settlement-only' classes have become increasingly prominent." *Radosti v. Envision Emi, LLC*, 717 F. Supp. 2d 37, 50 (D.D.C. 2010) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997)). "When presented with a settlement-only class, a court must determine whether the proposed class satisfies the requirements of [Rule] 23, with one exception: the court does not need to consider whether 'the case, if tried, would present intractable management problems.'" *Alvarez v. Keystone Plus Constr. Corp.*, No. 13-602, 2014 WL 1400846, at *3 (D.D.C. Apr. 11, 2014) (citing *AmChem*, 521 U.S. at 620 and *Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998)).

The "party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all prerequisites of Rule 23(a) are satisfied and the class falls within one of the categories of Rule 23(b)." *Bynum v. District of Columbia*, 214 F.R.D. 27, 30-31 (D.D.C. 2003) (citations omitted). Rule 23(a) requires a class to satisfy four criteria: 1) numerosity, so that joinder of all persons would be impractical; 2) commonality of questions of law and fact; 3) typicality of the named party's claims and defenses to the members of the class; and 4) adequacy of representation of the class by the named party and counsel. Fed. R. Civ. P. 23(a); *Amchem*, 521 U.S. at 614. Plaintiffs must also demonstrate that a class is maintainable under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. A plaintiff satisfies Rule 23(b)(3) by showing that: "(1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### B. Analysis

In this case, the motion for class certification is unopposed. Nonetheless, the Court reviews the standards for certification below and finds that Plaintiff has met his burden under Rule 23. *See In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013) (reviewing requirements of Rule 23 before certifying a class for settlement purposes); *Radosti*, 717 F. Supp. 2d at 51 (starting with analysis of Rule 23(a) certification factors "since the settlement class must comport with the requirements of Rule 23").

### 1. Existence of a Class

"It is axiomatic that for a class action to be certified a 'class' must exist." *Barnes v. District of Columbia*, 242 F.R.D. 113, 120 (D.D.C. 2007) (citing *Simer v. Rios*, 661 F.2d 655,

669 (7th Cir. 1981)); *see also Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992)

(clearly defined class is necessary "to ensure that the class is neither amorphous, nor imprecise"

(internal citation omitted)).  At this juncture, the Court is satisfied that Plaintiff's proposed class

definition—persons who have had their OASDI Benefits payments reduced since September 3,

2004 through application of WEP because they also receive NII Old Age Benefits—is tailored

properly because it allows an individual "to determine, simply by reading the definition, whether

he . . . is a member of the proposed class."  *Bynum*, 214 F.R.D. at 32; *see also* Fed. R. Civ. P.

23(c)(1)(C) ("An order [on class certification] may be altered or amended before final

judgment.").

    **2.  Rule 23(a) Requirements**

      **a.  Numerosity**

"Courts in this District have generally found that the numerosity requirement is

satisfied and that joinder is impracticable where a proposed class has at least forty members."

*Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012) (quoting *Cohen v. Chilcott*, 522

F. Supp. 2d 105, 114 (D.D.C. 2007)); *see also Lindsay v. Gov't Emps. Ins. Co.*, 251 F.R.D. 51,

55 (D.D.C. 2008) ("Typically, a class in excess of 40 members is sufficiently numerous to satisfy

[the numerosity] requirement."); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246

F.R.D. 349, 357 (D.D.C. 2007) (citing cases).

As noted above, the class proposed here would encompass as many as 1,666

persons whose OASDI Benefits payments may have been reduced.  This class far exceeds the

generally accepted size of 40 people, thereby rendering joinder impracticable and satisfying the

numerosity requirement.

### b. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). It is not necessary that "every issue of law or fact be the same for each class member." *Bynum*, 214 F.R.D. at 46. Rather, "[t]he commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 300 (D.D.C. 2007) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001)); *see also Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).

As Plaintiff has articulated, there are many questions of fact and law common to the class, including whether: (1) NII Old Age Benefits are based on prior employment earnings; (2) SSA's policy of applying WEP to reduce claimants' OASDI Benefits payments based on their receipt of NII Old Age Benefits is unlawful; (3) the members of the proposed Class are entitled to an injunction prohibiting SSA from continuing this policy; and (4) the members of the proposed Class are entitled to an injunction ordering SSA to recalculate their past OASDI Benefits payments and to pay those amounts. Accordingly, the Court finds that the commonality requirement is met.

### c. Typicality

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Vista Healthplan, Inc.*, 246 F.R.D. at 358 (quoting *Lorazepam I*, 202 F.R.D. at 27). Plaintiff's claim and those of putative class members

all arise from the same course of conduct: SSA's application of WEP to reduce OASDI Benefits because Plaintiff and class members receive NII Old Age benefits. The claim is also based on the same legal theory: SSA's conduct is unlawful under the Social Security Act and SSA's own regulations. The fact that Plaintiff and the putative class members may have different damage amounts does not preclude a finding of typicality. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 261 (D.D.C. 2002) ("The typicality requirement does not mandate that . . . damages of the named plaintiffs must be the same as those of the absent class members."). Therefore, as Plaintiff's claims can easily be described as typical of the proposed class, the Court finds the required typicality.

### d. Adequacy of Representation

Certified classes must have adequate representation. *See* Fed. R. Civ. P. 23(a)(4). This requirement addresses both adequacy of the named plaintiff and adequacy of counsel. The requirement is met when: (1) there is no conflict of interest between the legal interests of the named plaintiff and those of the proposed class; and (2) counsel for the class is competent to represent the class. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

Mr. Greenberg's interests are neither antagonistic to nor in conflict with the interests of the putative class members. To the contrary, his claims mirror those of the class. Additionally, the Court is satisfied that Kelley Drye can fairly and adequately represent the class. The law firm has ample experience in this area and can represent the interests of the class in a satisfactory manner. *See infra* II.B.5. Defendants do not argue otherwise.

### 3. Rule 23(b) Requirements

Plaintiff seeks to certify the class pursuant to Rule 23(b)(3).[3]  This Rule requires the Court to consider whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### a. Predominance

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Amchem*, 521 U.S. at 623; *see also Alvarez*, 2014 WL 1400846, at *6.  "Significantly, the common issues need only be predominant, not dispositive of the litigation."  *Vista Healthplan, Inc*, 246 F.R.D. at 359 (citing *Lorazepam I*, 202 F.R.D. at 29).  The predominance requirement is linked to the commonality requirement in that "[p]laintiffs must show that the common issues identified by the Court . . . as sufficient under Rule 23(a)(2) predominate over any non-common issues."  *Chilcott*, 522 F. Supp. 2d at 116 (citing *Vitamins I*, 209 F.R.D. at 262).

Here, common questions predominate over any issues that are not common among the class.  Mr. Greenberg's central theory of liability—that SSA has a general policy of applying WEP to NII Old Age Benefits, thereby reducing the amount of OASDI Benefits

---

[3] In the alternative, Plaintiff seeks to certify the class either as a Rule 23(b)(2) class or as a hybrid 23(b)(2)/(b)(3) class.  However, because Plaintiff is not seeking monetary relief that is only "incidental," certification under Rule 23(b)(2) alone is inappropriate.  *See Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).  Further, "[b]ecause the class[ ] will be certified under Rule 23(b)(3), the Court need not reach [the] request" to certify the class as a hybrid.  *Hardy*, 283 F.R.D. at 26 n.3.

received—is common to every class member. *Alvarez*, 2014 WL 1400846, at *7. Moreover, predominance is not negated by the fact that each class member will be entitled to a different damages figure in the amount their OASDI Benefits were improperly reduced. *See id.* ("[E]ven the minor differences between the class members—such as the amount of total damages—are susceptible to generalized proof since a common formula is used to calculate the individual damages."); *Bynum*, 214 F.R.D. at 39 (The fact that "the award that each individual class member is entitled to may vary significantly . . . . would not preclude a finding that common questions of law and fact predominate over individual questions."). Accordingly, the Court concludes that the predominance requirement is met in this case.

### b. Superiority

The superiority requirement of Rule 23(b)(3) is satisfied when a court finds that maintaining the present action as a class action will be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). This requirement "ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences.'" *Vista Healthplan*, 246 F.R.D. at 359 (quoting *Amchem*, 521 U.S. at 615).

In this case, a class action is clearly the superior method to adjudicate the claim. The central issue is whether SSA erroneously applied WEP to beneficiaries who also receive NII Old Age benefits. SSA has already admitted the error and merely wants to settle the legal issue and pay any SSA benefits owed. Any class member who wishes to prosecute his own claim may opt out of the Class. Because the class is certified only for settlement, the Court "need not

11

inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

### 4. Notice

In certifying a class under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Using its records, SSA has already identified the beneficiaries to whom notice should be sent, though not all may ultimately prove to be class members. The parties have requested a brief conference to discuss with the Court the timing for submitting the notice plan and the specific notice provisions. The Court will set a date for this conference in a separate scheduling order. *See* LCvR 23.1(c) ("In certifying a class action as maintainable under Rule 23(b)(3), the court may include in its order the provisions for notice pursuant to Rule 23(c)(2) *or may postpone a determination of the matter*." (emphasis added)).

### 5. Appointment of Class Counsel

Under Rule 23(g), in appointing class counsel a court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; (4) the resources that counsel will commit to representing the class; and (5) any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1).

Here, Kelley Drye has a significant history of investigating the claims in this action and handling similar matters. Indeed, Ira Kasdan of Kelley Drye represented the plaintiff in the *Berger* litigation, where he challenged the same SSA policy at issue here. Further, there is no dispute as to whether Kelley Drye attorneys are appropriate to serve as class counsel. Therefore, Kelley Drye will be appointed as class counsel.

### C. Certification of the Class

Plaintiff has demonstrated the existence of a class and has met the requirements of Rule 23(a) by showing numerosity, commonality, typicality, and adequacy. Moreover, Plaintiff has satisfied the criteria of Rule 23(b)(3): that common questions of law and fact predominate and that a class action is a superior method of adjudication. Accordingly, the Court finds that certification is proper under Rule 23 and certifies a class for the purpose of effectuating the settlement agreement between the parties.

### III. ATTORNEY FEES

Although the parties agree about the merits of the case, they dispute the appropriate law to be applied in calculating attorney fees. Plaintiff argues that the Court should award attorney fees under Section 406(b) of the Social Security Act, 42 U.S.C. § 406(b) (hereinafter, Section 406(b) or § 406(b)).[4] Defendants contend that the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), is the proper statutory authority for an award of fees in a class

---

[4] Alternatively, Plaintiff contends that attorney fees are warranted under the common fund doctrine. The Court declines to reach this issue as it is unnecessary to the decision.

action concerning Social Security benefits.[5]  The Court has identified no precedents on the question.  Resolution is necessary at this juncture so that information about attorney fees can be included in any notice of a proposed settlement to the class.  *See* Fed. R. Civ. P. 23(g) (court may provide directions about attorney fees and costs when appointing class counsel).  Moreover, SSA will be able to issue payments more efficiently to class members pursuant to the terms of the settlement agreement once it knows whether a fee award must be withheld from those payments under § 406(b).  For the reasons set forth below, the Court finds that Plaintiff's counsel may seek a fee award from past-due benefits owed to class members in an amount no greater than twenty-five percent of any individual's payment.  The Court will determine the amount of a reasonable fee at a later date.

## A.  Legal Standards

### 1.  Section 406(b) of the Social Security Act

Section 406(b) provides that "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S.C. § 406(b)(1)(A).  Fees awarded under § 406(b) are withheld by SSA and are paid directly out of the claimant's benefits.  *Gisbrecht*, 535 U.S. at 802; *Buljina*, 828 F. Supp. 2d at 112.  Contingent fee agreements, under which an attorney may recover some percentage of the

---

[5] It is not entirely clear whether Defendants contend that § 406(b) precludes attorneys' fees in all class actions, or only those involving a contingent fee agreement.  As explained below, § 406(b) does not require contingent fee agreements.  However, it is true that "Social Security claimants most commonly hire attorneys on a contingency basis." *Buljina v. Astrue*, 828 F. Supp. 2d 109, 112 (D.D.C. 2011); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 805 (2002) (noting "the prevalence of contingent-fee agreements between attorneys and Social Security claimants").

proceeds if the claimant prevails, are permissible under § 406(b) so long as a court reviews such

arrangements "to ensure that they do not yield a 'windfall' to the plaintiff's attorney." *Buljina*,

828 F. Supp. 2d at 112-13 (quoting *Gisbrecht*, 535 U.S. at 807 & n.17).

### 2. The Equal Access to Justice Act

"Under EAJA, a party prevailing against the United States in court, including a

successful Social Security benefits claimant, may be awarded fees payable by the United States

if the Government's position in the litigation was not substantially justified." *Gisbrecht*, 535

U.S. at 796 (internal citations omitted). "Unlike § 406(b) awards, EAJA fee awards 'are

determined not by a percent of the amount recovered, but by the time expended and the

attorney's [hourly] rate,' subject to a specified cap, and are paid by the government, not the

claimant." *Parrish v. Comm'r of Soc. Sec. Admin.*, 698 F.3d 1215, 1218 (9th Cir. 2012) (quoting

*Gisbrecht*, 535 U.S. at 796). An attorney who successfully represents a Social Security benefits

claimant in court may receive fees under both EAJA and § 406(b), but must "'refund to the

claimant the amount of the smaller fee.'" *Gisbrecht*, 535 U.S. at 796 (quoting Act of Aug. 5,

1985, Pub. L. 99-80, § 3, 99 Stat. 186).

### B. Analysis

### 1. Statutory Interpretation

Given the lack of judicial consideration of this issue, the Court turns to general

principles of statutory interpretation to discern the boundaries of § 406(b). "Statutory

construction must begin with the language employed by Congress and the assumption that the

ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs.*

*Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004); *see also FTC v. Tarriff*, 584

F.3d 1088, 1090 (D.C. Cir. 2009) (finding that unless otherwise defined, the words of a statute

must be construed according to their common meaning).  Here, § 406(b) explicitly states that when the Court renders a favorable judgment awarding a claimant past-due Social Security benefits, it may also determine and allow a reasonable fee for the claimant's attorney.  42 U.S.C. § 406(b).  Nothing in the language of this provision remotely suggests that Congress intended to deprive courts of the ability to set reasonable attorney fees in class action lawsuits.

  The fact that § 406(b) refers to a singular claimant does not render it inapplicable to class actions.  "Statutory interpretation focuses on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'"  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1754 (2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  Here, the language and context of § 406(b) suggest that attorney fees are allowable in cases with multiple claimants.  While no court has explicitly found that the language of § 406(b) extends to class actions, the Supreme Court has held that § 405(g) of the Social Security Act allows for class relief, despite the fact that it authorizes a singular "individual," "plaintiff," or "claimant" to challenge a decision of the Social Security Commissioner.  *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("The fact that the statute speaks in terms of an action brought by 'any individual' or that it contemplates case-by-case adjudication does not indicate that the usual Rule providing for class actions is not controlling, where under that Rule certification of a class action otherwise is permissible.").[6]  Under traditional canons of statutory construction, courts "presume 'identical words used in different parts of the same act are

---

[6] Defendants argue that the construction of "claimant" in *Yamasaki* is inapplicable in the § 406(b) context because the Supreme Court, in finding that numerous claimants could be joined in a Social Security class action because they were pursuing a common challenge, did not consider the attorney-client relationship.  However, the fact that attorney fees were not at issue in *Yamasaki* does not change the principles of statutory construction, which militate in favor of an interpretation allowing an attorney to represent and collect fees from multiple claimants pursuing a common challenge.

intended to have the same meaning.'" *Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 180 (D.C. Cir. 2008) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). Accordingly, given that the statute consistently refers to individual claimants and the Supreme Court has construed such language to allow class actions, the Court finds that the use of the term "claimant" in § 406(b) does not render attorney fees unavailable in class actions to recover SSA Benefits.[7]

### 2. Legislative Purpose

In order to further "determine legislative intent and to clarify the meaning of [the] statute[ ] so as to avoid ambiguity and absurd or unreasonable results," a court may also look to legislative history. *United Air Lines, Inc. v. Civil Aeronautics Bd. (Holding Co. Reorganizations)*, 569 F.2d 640, 647 (D.C. Cir. 1977). The legislative history of § 406(b) indicates the provision was motivated by two main concerns: first, that attorneys were collecting "inordinately large fees" in social security cases; and second, that attorneys should be able to collect reasonable fees. *Gisbrecht*, 535 U.S. at 805.[8] As stated by the Tenth Circuit: "[i]t is

---

[7] The Supreme Court has also counseled against adopting a "too technical construction of [§ 406(b)]." *Hopkins v. Cohen*, 390 U.S. 530, 534 (1968). *Hopkins* held that under § 406(b), a claimant's attorney could properly recover a fee based on past-due benefits received by the claimant's entire family, rather than just the benefits received by the claimant alone. Rejecting a strict interpretation of the statute, the Court held that nothing in the legislative history of § 406(b) restricts the ability of an attorney to collect up to twenty-five percent of only benefits accrued to the claimant, as distinguished from his dependents. *Id.* at 534-35.

[8] The legislative history states, in its entirety:

> It has come to the attention of the committee that attorneys have upon occasion charged what appear to be inordinately large fees for representing claimants in Federal district court actions arising under the social security program. Usually, these large fees result from a contingent-fee arrangement under which the attorney is entitled to a percentage (frequently one-third to one-half) of the accrued benefits. Since litigation necessarily involves a considerable lapse of time, in many cases large amounts of accrued benefits, and consequently large legal fees, are payable if the claimant wins his case.

apparent . . . that [with §406(b),] Congress desired to encourage attorneys to represent Social Security claimants." *McGraw v. Barnhart*, 450 F.3d 493, 499-500 (10th Cir. 2006). Thus, a "broader reading of § 406(b)(1)," to include fee recovery in class action cases, "is the more appropriate reading" to promote representation in Social Security cases while ensuring that attorney fees remain reasonable. *Id.* After considering the statutory language and legislative history, this Court cannot find "the necessary clear expression of congressional intent to exempt actions brought under [§ 406(b)] from the operation of the Federal Rules of Civil Procedure." *Yamasaki,* 442 U.S. at 700.

### 3. Defendant's Arguments

Defendants set forth various arguments, all of which are unavailing, in an attempt to persuade the Court that attorney fees in a Social Security class action suit are inappropriate under § 406(b). Presuming that a contingent fee agreement is a necessary predicate for an award under § 406(b), Defendants argue that fees here are improper because absent class members have not entered into explicit contingency arrangements with Kelley Drye. The statute, however, does not demand a contingent agreement; it merely states that the court may award reasonable attorney fees, not in excess of twenty-five percent of total past-due benefits, to a lawyer who has represented a successful claimant in court. *See* 42 U.S.C. § 406(b). Indeed, courts have held that

---

The committee bill would provide that whenever a court renders a judgment favorable to a claimant, it would have express authority to allow as part of its judgment a reasonable fee, not in excess of 25 percent of accrued benefits, for services rendered in connection with the claim; no other fee would be payable. Any violation would be made subject to the same penalties as are provided in the law for charging more than the maximum fee prescribed in regulations for services rendered in connection with proceedings before the Secretary-up to $ 500, or a year's imprisonment, or both. In order to assure the payment of the fee allowed by the court, the Secretary would be permitted to certify the amount of the fee to the attorney out of the amount of the accrued benefits.

*McGraw*, 450 F.3d at 500 (quoting 1965 U.S.C.C.A.N. 1943, 2062).

fees under § 406(b) may be available where there is no contingency arrangement between the claimant and his counsel. *See Thomas v. Astrue*, 359 Fed. App'x 968, 975 (11th Cir. 2010) (finding that district court should determine reasonable fee under § 406(b) even where there is no valid contingency agreement); *Artrip v. Colvin*, No. 07-0023, 2013 WL 1399046, at *2 (W.D. Va. Apr. 5, 2013) (absence of fee agreement for work performed in court "does not foreclose plaintiff's counsel from seeking a fee under 42 U.S.C. § 406(b)");[9] *Tantillo v. Barnhart*, No. 04 Civ. 2223, 2011 WL 2680536, at *7 (E.D.N.Y Jul. 8, 2011) ("[E]ven without the [contingent fee agreement], [counsel] had the right under § 406(b) to apply for a 25% contingent fee for work in the district court. The presence of an agreement is one factor that [the judge] could and did consider, but he still had the ability under § 406(b) to award the fee that he in fact awarded."), *vacated in part on other grounds*, 2011 WL 6114755 (E.D.N.Y. Dec. 7, 2011). Accordingly, Defendants' argument that an attorney cannot seek fees from past-due benefits without an individual contingent fee agreement with each class member carries no weight.

Defendants also maintain that § 406(b) requires an attorney to represent a claimant in his individual capacity and that absent class members have not authorized class counsel to do so. The Court is not persuaded, however, that "the creation of an attorney-client relationship under § 406(b) is predicated upon an express authorization by a claimant to retain an attorney for his or her individual claim." Defendants' Opposition to Plaintiff's Motion for Determination of Attorney Fees (Def. Mem.) [Dkt. 17] at 8. To start, Defendants provide no legal authority for this proposition. Furthermore, in class actions brought in various other

---

[9] In *Artrip*, because there was no contingency agreement for work performed in court, the court calculated attorney fees using the lodestar method, "whereby a reasonable fee is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate to assess the reasonableness of the fee." 2013 WL 1399046, at *2. However, *Gisbrecht* is clear that when a contingency fee agreement does exist, relying on the lodestar approach is inappropriate. 535 U.S. at 806.

contexts, there is no requirement that absent class members give their express authorization before an attorney can represent them in court. To the contrary, courts routinely find that "class counsel represents all class members as soon as a class is certified." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985). *See also Palumbo v. Tele-Communications*, 157 F.R.D. 129, 133 (D.D.C. 1994) ("[I]n certifying a class action, the Court confers on absent persons the status of litigants and 'creates an attorney-client relationship between those persons and a lawyer or group of lawyers.'") (quoting *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992)); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 846 (N.D. Cal. 2010) ("Although not all courts are in agreement, most courts have held that, '[o]nce a class has been certified, the rules governing communications [with class members] apply as though each class member is a client of the class counsel.'" (quoting Manual of Complex Litig. § 21.33, at 300 (4th ed. 2004))). There is no reason why counsel's representation in a class action under § 406(b) should be any different.

Given that class counsel represents absent class members who choose not to opt-out, allowing class counsel to seek a contingent fee without an explicit signed agreement from each absent class member is not "unprecedented and unwarranted," as Defendants suggest. Def. Mem. at 8. Rather, courts consistently award attorneys' fees in class actions where the absent class members are not apprised of the proposed fee arrangement until after either a preliminary settlement has been reached or the court has decided in favor of the plaintiffs.[10] In such cases, courts have not required individual fee agreements, but have deemed it sufficient to notify absent

---

[10] The Court recognizes that the cases cited here do not address § 406(b), but rather involve fee payments made out of a common fund. In those cases, counsel's fees were not awarded under a fee-shifting regime, but rather out of plaintiffs' recovery, like § 406(b). The Court finds these cases persuasive in their instruction that attorney fees in a class action may be awarded in the absence of individual fee agreements as long as absent class members are aware of the arrangement and are given the opportunity to object.

class members of the proposed arrangement and allow for objections.  *See, e.g.*, *Kifafi v. Hilton Hotels Ret. Plan*, No. 98–1517, 2013 WL 6053754, at \*2-3, \*8 (D.D.C. Nov. 18, 2013) (after deciding in favor of class, court ordered parties to notify class members of increase in benefits and request for attorney fees, resulting in reduction of each class member's benefit increase, and to provide instructions for class members to object to requested fee award, which were considered when Court determined reasonableness of award); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 204-05 (D.D.C. 2011) (proposed settlement agreement in class action provided that attorney fees would not be greater than twenty-five percent of settlement, gave notice to class members of opportunity to object, and court considered objections when determining fee); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 85-86 (D.D.C. 2006) (approving attorney fee award where proposed settlement agreement notified class members that fees would be paid from fund and court considered individual objections).  Pragmatic concerns also support this conclusion.  As noted by Plaintiff, "[a]s a practical matter, the attorney will not be able to secure a fee agreement from each class member."  Memorandum of Law In Support of Plaintiff's Motion for Determination of Attorneys' Fees (Pl. Mem.) [Dkt. 15-2] at 25 (citing Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1803.1 (3d ed. 2013)).  Requiring individualized authorization would be overly burdensome and undermine the efficiency that a class action is designed to promote.  Thus, the Court finds that in this context, where the parties have reached a potential settlement, class counsel may seek fees under § 406(b) so long as notice is provided to absent class members and they are given an opportunity to opt out or object.

The Court also rejects Defendants' related argument that § 406(b) fees are improper because the Court is unable to review individual contingent agreements for reasonableness.  In this case, prior to any final approval of the settlement or award of attorney

fees, the Court will hold a hearing to determine the reasonableness of the agreement and the fee

award. Any concerns about the reasonableness of the fee arrangement between counsel and class

members can be raised as objections and considered prior to determining a fee award. As set

forth in *Gisbrecht*, the Court will "look[ ] first to the contingent-fee agreement, . . . test[ ] it for

reasonableness," and may "appropriately reduce[ ] the attorney's recovery based on the character

of the representation and the results the representative achieved." 535 U.S. at 808.

Regarding the Court's review of the agreement, Defendants argue that a Fairness

Hearing is insufficient because, at that point, absent class members will be unable to object to the

application of § 406(b) and "[a]s a result, the propriety of pursuing a fee award under § 406(b)

rather than EAJA will not be addressed." Def. Mem. at 10. However, the Court has considered

the propriety of such awards herein and finds that fees under § 406(b) are appropriate. The

statute does not require a court to choose between EAJA and § 406(b); rather, it provides that an

attorney representing a Social Security claimant may be awarded fees under *both* EAJA and

§ 406(b) as long as he "refund[s] to the claimant the amount of the smaller fee." *Gisbrecht*, 535

U.S. at 796. While Defendants argue that there is a conflict of interest in allowing class counsel

to be awarded fees from individual class members' benefits, that conflict is clearly one

contemplated by Congress and approved by the Supreme Court.[11] There is no greater conflict of

interest here than in any other Social Security case where the attorney seeks § 406(b) fees from

an individual plaintiff, as § 406(b) fees are always collected from the successful plaintiff's

---

[11] Specifically, Defendants maintain that allowing an award under § 406(b) would present a
conflict of interest because absent class members have not consented to class counsel's
representation for their individual claims and have not authorized counsel to seek fees under
§ 406(b). The Court finds that absent class members are represented by class counsel and that no
other explicit authorization is required to allow attorneys to seek fees to which they are legally
entitled under § 406(b). Absent class members may opt out or raise objections, which will be
considered by the Court at a later time.

recovery. *Buljina*, 828 F. Supp. 2d at 112 ("§ 406(b) authorizes the attorney of a successful claimant to recover directly from her client.").  Furthermore, Plaintiff has stated that class counsel here may seek EAJA fees as well, which would reduce the fees to be paid by class members.  *See Gisbrecht*, 535 U.S. at 796 ("[A]n EAJA award offsets an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the . . . EAJA award up to the point the claimant receives 100 percent of the past-due benefits.").

While acknowledging that contingent fee agreements may be proper under *Gisbrecht*, Defendants contend that class counsel here "do not bear a risk of loss that warrants a contingent fee" because both parties "have provisionally agreed to file a stipulation of settlement, subject to approval by the Department of Justice."  Def. Mem. at 5.  The Court disagrees that "[t]he settlement of this action removes any litigation risk."  *Id.*  As Plaintiff points out, there are various potential issues "that may prevent a settlement, including the Justice Department's failure to approve the settlement terms, or even a change in the law."  Reply in Support of Plaintiff's Motion for Determination of Attorneys' Fees [Dkt. 18] at 4.  And, when Plaintiff filed suit, it was not a foregone conclusion that SSA would agree to a settlement.  Indeed, SSA previously stated that it had acted erroneously and would recalculate the amount of any past-due benefits accordingly, but did not change its policy, thereby requiring the instant lawsuit.

Moreover, in determining what percentage of past benefits will constitute a reasonable attorney fee, the Court may consider the relative amount of risk faced by Plaintiff's counsel.  *See Buljina*, 828 F. Supp. 2d at 113-14 (observing risk of loss as a factor to be considered when determining reasonableness of contingency fee).  If the Court is ultimately persuaded that the risk of loss to Plaintiff's counsel was not substantial, it may reduce the fee

award accordingly. *See Damron v. Comm'r of Soc. Sec.*, 104 F.3d 853, 856-57 (6th Cir. 1997) (finding it appropriate to reduce requested rate under § 406(b) where fee agreement was not signed until after judgment entered in favor of plaintiff); *Porter v. Comm'r of Soc. Sec.*, No. 8:06 Civ. 1150, 2009 WL 2045688, at *4-5 (N.D.N.Y Jul. 10, 2009) (noting that fee was not truly contingent because agreement was signed after plaintiff prevailed and thus requested fees could be reduced for that reason alone); *Morrison v. Comm'r of Soc. Sec.*, No. 1:04 Civ. 454, 2008 WL 828863, at *3 (W.D. Mich. Mar. 26, 2008) (finding that failure to sign contingency agreement until after court remanded to agency is sufficient reason to decrease fee requested because there was zero risk of loss); *cf. Coppett v. Barnhart*, 242 F. Supp. 2d 1380, 1383 (S.D. Ga. 2002) ("A contingency fee is more likely to be reasonable the greater the risk that the claimant would not prevail." (citing *McGuire v. Sullivan*, 873 F.2d 974, 985 (7th Cir. 1989))).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's unopposed motion to certify the class under Rule 23(b)(3) will be granted. The Court also determines that counsel is entitled to attorney fees no greater than twenty-five percent of each beneficiary payment under 42 U.S.C. § 406(b). A memorializing Order accompanies this Opinion.

Date: August 8, 2014

                               /s/
                         ROSEMARY M. COLLYER
                         United States District Judge