## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                       )
**EPHRAIM GREENBERG,** *individually on*              )
*behalf of himself, and on behalf of all others*       )
*similarly situated,*                                  )
                                                       )        **Civil Action No. 13-1837 (RMC)**
            **Plaintiff,**                             )
                                                       )
    **v.**                                             )
                                                       )
**CAROLYN W. COLVIN,** *in her official capacity*      )
*as Acting Commissioner of the Social Security*        )
*Administration*, **and**                              )
                                                       )
**THE SOCIAL SECURITY**                                )
**ADMINISTRATION,**                                    )
                                                       )
            **Defendants.**                            )
_____ )

## MEMORANDUM OPINION

On November 21, 2013, Plaintiffs brought a class action lawsuit against the Social

Security Administration and Acting Commissioner Carolyn W. Colvin, in her official capacity.

The parties quickly began settlement negotiations and submitted to the Court a proposed

Settlement Agreement, which was preliminarily approved on April 8, 2015.  At the Fairness

Hearing on June 30, 2015, the parties jointly moved for final approval of the Settlement

Agreement and requested a ruling from the bench so that the Social Security Administration

could calculate the monies to be paid to Class Members.  At the Fairness Hearing, the Court

approved the Settlement Agreement and Consent Judgment [Dkt. 56], finding it fair, reasonable,

and adequate, and set the attorney fee award at 20%, *see* Order [Dkt. 57].  The Court now issues

this Memorandum Opinion to further explain its reasoning.

# I. BACKGROUND

On November 21, 2013, Plaintiff Ephraim Greenberg filed a class action complaint alleging that the application of a statutory provision known as the Windfall Elimination Provision (WEP), implemented by the Social Security Administration (SSA), unlawfully reduced his and other similarly situated claimants' SSA benefits. *See generally* Compl. [Dkt. 1].  Pursuant to WEP, SSA reduces a beneficiary's Old Age, Survivors, and/or Disability Insurance Benefits (OASDI Benefits or Social Security Benefits) in instances where, for the same months that a claimant is entitled to OASDI Benefits, that claimant is also entitled to a monthly pension "based in whole or in part on [ ] earnings in employment which was not covered under Social Security."  Compl. ¶ 24 (quoting 20 C.F.R. § 404.213(a)).  SSA's regulations also provide that "[p]ensions from noncovered employment outside the United States include pensions from social insurance systems that base benefits on earnings but not on residence or citizenship."  *Id.* ¶ 25 (quoting 20 C.F.R. § 404.213(a)).

As relevant here, SSA applied WEP to reduce OASDI Benefits in cases where recipients, such as Plaintiff and other similarly situated individuals, also received Old Age Benefits from the National Insurance Institute of Israel (NII Old Age Benefits).  NII Old Age Benefits are guaranteed to all residents of Israel who have reached a certain age, subject to residency requirements and payment into the system for a minimum time period.  Compl. ¶¶ 27-29.  Mr. Greenberg alleged that his OASDI Benefits should not be subject to WEP reduction based on his receipt of NII Old Age Benefits.[1]

---

[1] In previous litigation, the law firm of Kelley Drye & Warren successfully challenged the same WEP provision at issue here.  *See Berger v. Barnhart*, No. 04-0431 (D.D.C. 2004). In 2001, Rabbi Jerome Berger, represented by Kelley Drye & Warren, challenged SSA's application of WEP because it reduced his retirement benefits based on his receipt of NII Old Age benefits. *See Berger v. Barnhart*, No. 04-0431 (D.D.C. 2004).  While the suit was pending, SSA sought a remand to the agency.  On September 3, 2004, the SSA Appeals Council determined that Rabbi

Soon after the Complaint was filed in this case, the parties began settlement discussions. They filed a joint status report on April 2, 2014, stating that they had reached a partial resolution of Mr. Greenberg's claims on a class-wide basis and that the parties agreed that SSA should not apply WEP to a beneficiary who receives a NII Old Age pension. *See* Joint Status Report [Dkt. 11]. The parties reported that SSA had agreed to take the following actions: (1) rescind the practice of applying WEP to NII Old Age Benefits; (2) recalculate all Social Security benefits where WEP had been applied because a beneficiary received NII Old Age Benefits; and (3) pay all benefits that would have been paid had WEP not been applied. *Id.* at 2.

Upon notice from the parties that they were negotiating a settlement based on anticipated class certification, the Court certified a class after considering the requirements of Rule 23. *See* Op. [Dkt. 19]; Order [Dkt. 20]. On March 18, 2015, Plaintiffs filed an Unopposed Motion for Preliminary Approval of the Parties' Settlement Agreement and for Approval of the Notice Plan. *See* Unopposed Mot. [Dkt. 38]; Mem. in Support of Unopposed Mot. [Dkt. 38-2] (Prelim. Mem.). Following a status conference with the Court, the parties resubmitted an amended Settlement Agreement on March 30, 2015. *See* Notice [Dkt. 39]; Am. Settlement Agreement [Dkt. 39-1] (Settlement Agreement). On April 8, 2015, the Court preliminarily approved the Settlement Agreement and the proposed form of notice. *See* Order [Dkt 40].

---

Berger's Israeli pension did not trigger WEP because, for qualified individuals, NII Old Age benefits are based solely on residency status and payments into the NII system, but not on earnings. The Appeals Council further directed SSA to recalculate Rabbi Berger's social security benefits without regard to his NII Old Age benefits. SSA subsequently stated that: "other beneficiaries who are also receiving the NII pension may have had the WEP erroneously applied and that we should recalculate the current benefit amounts of all such beneficiaries and pay any back benefits due. We have begun the process of identifying such persons in our files, and we will take appropriate actions to correct any misapplication of the WEP." Compl. ¶ 36. Despite this stated intention, SSA continued to apply WEP to the OASDI Benefits of individuals who also receive NII Old Age Benefits.

Counsel for the class, Kelley Drye & Warren LLP (Class Counsel), explained their plan to notify the class as follows:

> (1) a notice to be mailed to all potential Class Members identified by the SSA or Class Counsel, which includes relevant details about the litigation and benefits of the Settlement Agreement, and instruction on how to access a website dedicated to this case and the settlement for more information; (2) the "Greenberg Lawsuit Website," www.ssa.gov/greenberg, which is to be established and maintained by the SSA on its official website and which will host information pertaining to the Lawsuit including a comprehensive, detailed notice form; (3) toll-free phone numbers established and operated by the SSA, to which Class Members and other persons can call to ask questions about the Settlement Agreement and to request a claim review; and (4) Class Counsel's request that Agudath Israel of America and the Association of Americans and Canadians in Israel post the Settlement Agreement and Long Form Notice on their websites and otherwise notify their members of the Lawsuit and settlement.

Prelim. Mem. at 23; *see also* Settlement Agreement, Section III, Art. 2 (setting out procedures for giving notice to Class Members).

On June 29, 2015, the parties confirmed that they had satisfied the Notice Plan's Requirements.  June 29 Status Report [Dkt. 52] at 2-3.[2]  The June 29 Status Report indicated that SSA had completed mailing of notice packets to the 1,696 potential Class Members by April 17, 2015.  *Id.*  The settlement was publicized to various organizations in Israel and advertised in many Israeli newspapers and on an Israeli radio show.  *Id.* at 3-4.  SSA also established a webpage to explain the settlement and post relevant documents.  *Id.* at 3.

On June 30, 2015 the Court held a Fairness Hearing to consider the parties' request for final approval of Class Action Settlement, and Class Counsel's Fee Application [Dkt. 41].  No Class Member appeared in support of or in opposition to the Settlement, though the

---

[2] Although filed on behalf of Plaintiffs, Defendants concurred with the status report.  June 29 Status Report at 1.

Court received eight letters (from nine individuals) objecting to Class Counsel's request for a 25% attorney fee award.[3]  At the Fairness Hearing, the parties moved for final approval of the Settlement Agreement and sought a ruling on Class Counsel's application for attorney fees; SSA could not pay Class Members their past-due benefits until after the Court approved the Settlement Agreement and set the percentage of the attorney fee award to be withheld from those benefits.  Fee Application at 2 n.1.

## II.  ANALYSIS

For the reasons stated at the Fairness Hearing, as supplemented by this Memorandum Opinion, the Settlement Agreement and Consent Judgment is fair, reasonable, and adequate.  Class Counsel is entitled to an attorney fee award of 20% of each payment of past-due benefits made by SSA as a result of this class action case.  At the Fairness Hearing, the Court approved the Settlement Agreement and Consent Judgment [Dkt. 56] and set the attorney fee award at 20%.  Order [Dkt. 57].

### A.  The Settlement

Settlement of a certified class action requires a court's approval.  Fed. R. Civ. P. 23(e).  Before granting its approval, a court has a duty to determine that the settlement is "fair, adequate, and reasonable and is not the product of collusion between the parties."  *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000).  A court "must strike a balance between a rubber stamp approval and 'the detailed and thorough investigation that it would undertake if it were actually trying the case.'"  *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007) (citation omitted).  Nonetheless, "the discretion of the

---

[3] Two of the letters suggested that a 10% fee was more appropriate, *see* Dkts. 47, 49, another proposed a fee of 15%, *see* Dkt. 44, and five others did not advocate for any particular fee award percentage, but objected to an award of 25%, *see* Dkts. 50, 51, 53, 54, 55.

Court to reject a settlement is restrained by the 'principle of preference' that encourages settlements." *In re Black Farmers Discrim. Litig.*, 856 F. Supp. 2d 1, 30 (D.D.C. 2011).

In this Circuit, there is no single test for evaluating a proposed settlement under Rule 23(e). *See In re LivingSocial Marketing and Sales Practice Litigation*, 298 F.R.D. 1, 11 (D.D.C. 2013). District courts consider the facts and circumstances of the case, and "examine[ ] the following factors: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *In re Lorazepam & Clorazepate Antitrust Litigation*, Civ. No. 99-970 (TFH), 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (collecting cases). The Court addresses each factor in turn.

### 1.  Arms-Length Negotiations

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 55 (D.D.C. 2008) (internal citations omitted). In this case, counsel for both parties demonstrated their legal abilities before this Court. Counsel has negotiated hard and well on behalf of their clients. As part of the negotiations, Class Counsel engaged in informal discovery regarding the size, nature, and reduction in benefits suffered by the Class Members. Prelim. Mem. at 16. In addition, Class Counsel has a significant history of investigating the claims in this action and handling similar matters. As described above, *see* n.1, in the *Berger* litigation, Class Counsel successfully challenged the same SSA provision that is at issue in this case.

There is also no sign of collusion between the parties here. The Settlement Agreement has been reviewed and approved by both SSA and the Department of Justice. *Id.* at

17.  Moreover, the Settlement Agreement reflects the reasonable compromises reached by both parties.[4]  Counsel agree that there was no collusion, up to and including settlement negotiations. June 29 Status Report at 12.  Accordingly, the Settlement Agreement was reached after arms' length negotiation, and that is thus presumptively fair, adequate, and reasonable.

### 2.   Terms of the Settlement in Relation to the Strength of Plaintiffs' Case

"Next, the Court compares the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case."  *In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013).

The Settlement provides that Defendants shall rescind the practice of applying WEP to NII Old Age Benefits, cease all collection efforts on Overpayments,[5] and no longer reduce Social Security Benefits on account of a person's receipt of NII Old Age Benefits.  *See* Settlement, Section III, Art. 3, § 3.1.  It further provides that:

> SSA shall review each eligible Class Member's file and record, and calculate and issue a payment to each eligible Class Member for:
>
> (a)  the full amount of all reductions, if any, that SSA made to the
>       Class Member's OASDI Benefits payment(s) since September

---

[4] A compromise on the part of Class Counsel was the agreement that SSA could cut off back payments to Class Members for reductions that SSA may have made to OASDI Benefits payments as of (but not prior to) the date of the SSA Appeals Council decision in *Berger*. Prelim. Mem. at 5 n.2.  SSA also compromised, agreeing to allow Class Counsel to review SSA's calculations of payments due to Class Members in order to assure the accuracy of the agency's computations.  *Id.*

[5] The Settlement Agreement defines "Overpayments" as "any determination by SSA that a Beneficiary has been overpaid an OASDI Benefits payment(s) and that the recipient would have to repay the overage and/or that overage would be subtracted from OASDI Benefits payment(s) or other benefits."  Settlement Agreement, Section II, ¶ 29.

3, 2004, through application of the WEP based on his or her
receipt of NII Old Age Benefits,

(b) *and,* the full amount of any collections, if any, that SSA has
made for any Overpayment(s) that have been assessed since
September 3, 2004, against the Class Member through
application of the WEP based on his or her receipt of NII Old
Age Benefits,

(c) *less*, the percentage, if any, of the amounts described in (a) and
(b) that the Court awards to Class Counsel as attorney fees.

In the course of SSA's review of each eligible Class Member's file
and record, SSA may make other adjustments in accordance with its
statutes, regulations, and policies.

*Id.*, Art. 4, § 4.2. Furthermore:

For each eligible Class Member, SSA shall review each Class
Member's file and record, rescind all Overpayments that have been
assessed since September 3, 2004, against the Class Member
through application of the WEP based on his or her receipt of NII
Old Age Benefits, and SSA shall cease all collection efforts on those
Overpayments. In the course of SSA's review of each eligible Class
Member's file and record, SSA may make other adjustments in
accordance with its statutes, regulations, and policies.

*Id.*, Art. 4, § 4.3.

The relief here is significant. SSA has agreed to pay each Class Member the full

amount that was deducted from his/her OASDI Benefits payments since September 3, 2004 (less

attorney fees) and to rescind all Overpayments assessed against eligible Class Members that it

made since September 3, 2004. If this case did not settle and were to proceed to trial, Class

Members would have to continue to wait for relief. Even if Plaintiffs were to prevail at trial, that

verdict could be appealed, resulting in even further delay to the final resolution of the case.

Preliminary Mot. at 12. Such a delay is of particular concern here given the aging population of

the Class Members, which is comprised of Social Security recipients. "[T]he delay in providing

relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties." *Luevano v. Campbell,* 93 F.R.D. 68, 89 (D.D.C. 1981).

Further, there is a risk that Class Members could get less relief that what is contemplated in the Settlement Agreement.  As articulated by Plaintiffs, "[w]ere this case to proceed, SSA conceivably could attack the claims of at least some members of the Class based on the normal requirement that a claimant must appeal a final decision by SSA within sixty (60) calendar days of a decision (*see* 42 U.S.C. § 405(g)) and the normal requirement that a claimant must exhaust his/her administrative remedies."  Prelim. Mot. at 19.  Though the ultimate success of such arguments is uncertain, the Settlement Agreement clearly eliminates any risk posed by such an affirmative defense.  Accordingly, the terms of the Settlement Agreement are eminently fair and reasonable in relationship to the strength of the remaining disputes.

### 3.  Stage of the Litigation at the Time of Settlement

Courts next "consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery."  *Lorazepam,* 2003 WL 22037741, at *4.  A court should determine that a settlement "does not come too early to be suspicious nor too late to be a waste of resource but is rather at a desirable point in the litigation for the parties to reach an agreement and to resolve the[] issues without further delay, expense, and litigation."  *Meijer,* 565 F. Supp. 2d at 57 (internal citation and quotation marks omitted).

Plaintiffs' Complaint was filed on November 21, 2013.  However, SSA had been aware of the claim underlying this class action since at least 2001, when Rabbi Berger challenged SSA's application of the WEP policy to his NII Old Age Benefits.  Furthermore, the parties here have engaged in informal discovery, counsel participated in extensive negotiations, and there is no doubt that the parties had a realistic assessment of their potential recovery and

corresponding exposure.  The Settlement Agreement, therefore, was reached at an appropriate stage in the litigation.

### 4.   Reaction of the Class

"The existence of even a relatively few objections certainly counsels in favor of approval."  *Lorazepam*, 2003 WL 22037741, at *6.  As of Friday June 26, 2015, only ten weeks since SSA completed its mailing of the notice packets, approximately 513 people have submitted Settlement Claim Review Requests to SSA and there were no objections to the terms of the Settlement.  *See* June 29 Status Report at 5.  The only objections are 8 letters, in which 9 people expressed the view that Class Counsel should not receive 25% in attorney fees (discussed further below).  *See* Dkts. 44, 47, 49, 50, 51, 53, 54, 55.  SSA has received Settlement Claim Review Requests from more than 30% of the number of persons on the Mailing List, and the deadline to submit a Settlement Claim Review Request is not until June 2017.  June 29 Status Report at 5. Finally, as of the opt-out deadline, June 22, 2015, approximately 63 people had submitted opt-out forms to Class Counsel meaning that (assuming a potential class of 1,696 people) the projected final acceptance rate is over 96%.  *Id.* at 5, 8.[6]

At the Fairness Hearing, the Court found that the class reaction to the Settlement Agreement is overwhelmingly positive.  As noted, a significant number of Settlement Claim Review Requests have already been submitted in the ten weeks since the packets were mailed. *Id.* at 6.  Further, Class Counsel has received an abundance of positive comments from individual class members.  *Id.* (summarizing positive feedback such as "Thank you so much for your very

---

[6] Class counsel noted that the number of opt outs may be lower than 63 because some people who submitted opt-out forms also submitted Settlement Claim Review Request forms.  Class Counsel will attempt to contact those individuals to determine whether they truly intended to opt-out.  June 29 Status Report at 8.

informative and timely response . . . . Great work! Glad to hear you won the case. This is quite

an achievement for all Americans living in Israel . . . Keep up the great public service your law

firm is doing for Americans living in Israel."). Additionally, the only objections have been to the

attorney fee award request; there have been no objections to the terms of the Settlement

Agreement. Accordingly, the positive reaction of the class counsels in favor of approving the

Settlement Agreement.

### 5. Opinion of Experienced Counsel

Finally, the opinion of experienced counsel "should be afforded substantial

consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam*,

2003 WL 22037741, at *6. Class Counsel and counsel for Defendants believe that the

Settlement is fair, adequate and reasonable. Because the attorneys are experienced in litigating

and settling complex cases, including class actions, the Court credits their opinions.

### 6. Approval of Settlement Agreement

After consideration of the terms of the Settlement, all papers filed in connection

therewith, the arguments of counsel at the earlier hearings in this case and at the Fairness

Hearing, and the factors discussed above, the Court concludes that the Settlement is fair,

reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

### B. Plan of Allocation

Generally, the Court must "consider whether distribution plans are fair,

reasonable, and adequate." *Lorazepam*, 2003 WL 22037741, at *7. Here, however, as Class

Counsel explained:

> This is not a class action settlement in which a fixed settlement fund
> is to be divvied out among persons who submit claims against that
> fund. Rather, SSA will pay each person whose OASDI Benefits
> payment(s) were improperly reduced the full amount of that
> reduction (less, potentially, a percentage to be awarded for attorney

> fees), subject to the terms of the Settlement Agreement. *See* SA Art.
> 4.1-4.2.  Accordingly, there is no need for an allocation plan.

June 29 Status Report at 8-9.  The strategy set forth above is a rational approach to providing

class members the amounts they are owed, and no class member has objected.  No plan of

allocation is necessary in this case, and the parties' plan to refund Class Members is approved.

### C.  Attorney Fees

Finally, the Court turns to the attorney fees requested by Class Counsel.  "In a

certified class action, the court may award reasonable attorney's fees and nontaxable costs that

are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "Courts have a duty

to ensure that claims for attorney's fees are reasonable."  *Cohen v. Chilcott*, 522 F. Supp. 2d 105,

122 (D.D.C. 2007).

Prior to the filing of the class action Complaint in this case, Class Counsel entered

into a contingency fee agreement with Mr. Greenberg, in which they agreed that Class Counsel

would attempt to receive, as a contingency fee for representation of Mr. Greenberg and the Class

Members, 25% of Mr. Greenberg's and the Class Members' past-due benefits obtained as part of

this case.  Fee Application at 6.  This Court previously held that Class Counsel is entitled to seek

attorney fees under the fee provision of the Social Security Act, 42 U.S.C. § 406(b), noting that

"counsel may seek a fee award from past-due benefits owed to Class Members in an amount no

greater than twenty-five percent of any individual's payment."  *Greenberg v. Colvin*, Civil Case

No. 13-1837 (RMC), 2014 WL 3884181, at *7, *11 (D.D.C. Aug. 8, 2014).  The Court further

stated that:

> prior to any final approval of the settlement or award of attorney
> fees, the Court will hold a hearing to determine the reasonableness
> of the agreement and the fee award.  Any concerns about the
> reasonableness of the fee arrangement between counsel and class
> members can be raised as objections and considered prior to

12

> determining a fee award.  As set forth in *Gisbrecht*, the Court will
> "look[ ] first to the contingent-fee agreement, . . . test[ ] it for
> reasonableness," and may "appropriately reduce[ ] the attorney's
> recovery based on the character of the representation   and the
> results the representative achieved."

2014 WL 3884181, at *11 (quoting *Gisbrecht*, 535 U.S. at 808).

### 1.   Legal Standards

Under Section 406(b) of the Social Security Act, "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment."  42 U.S.C. § 406(b)(1)(A).  Fees awarded under § 406(b) are paid directly out of the claimant's benefits.  *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Buljina v. Astrue*, 828 F. Supp. 2d 109, 112 (D.D.C. 2011).  Section 406(b) requires that courts review "such arrangements as an independent check, to assure that they yield reasonable results in particular cases."  *Gisbrecht*, 535 U.S. at 807.  Contingent fee agreements, under which an attorney may recover some percentage of the proceeds if the claimant prevails, are permissible under § 406(b) as long as the court reviews such arrangements "to ensure that they do not yield a 'windfall' to the plaintiff's attorney."  *Buljina*, 828 F.Supp.2d at 112–13 (quoting *Gisbrecht*, 535 U.S. at 807 & n. 17).

While holding that Section 406(b) allows for contingent fee arrangements, the Supreme Court in *Gisbrecht* "left open which factors should guide a district court's analysis when reviewing a petition for attorney's fees."  *Id.* at 113.  *Gisbrecht* did suggest, however, that in reviewing an agreement for reasonableness, a court may consider "the character of the representation and the results the representative achieved."  535 U.S. at 808.  For example, a

downward adjustment in fees may be warranted if an attorney causes delay in a case or if benefits are large in comparison to time spent on the case. *Id. Gisbrecht* also provided that the "lodestar" analysis should not be the exclusive method of calculating awards of attorney fees under the Social Security Act. *Id.* at 806.  District courts have the authority to determine whether contingency fees are reasonable and "the district court's discretion is to be guided by the facts of each particular case." *Buljina*, 828 F. Supp. 2d at 114 (collecting cases).

In evaluating a fee request for reasonableness in non-Social Security cases, courts in this district have considered various factors including: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by class members to the settlement terms or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of litigation; (5) the risk of non-payment; (6) the time devoted to the case by plaintiffs' counsel; and (7) awards in similar cases. *See, e.g.*, *Hubbard v. Donahoe*, 958 F. Supp. 2d 116, 125 (D.D.C. 2013); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 205 (D.D.C. 2011); *In re Lorazepam*, 2003 WL 22037741, at *8.[7]

**2.  Analysis**

In accordance with Federal Rule of Civil Procedure 23(h)(1), Class Counsel gave notice to Class Members that it would petition the Court for attorney fees of up to 25% of the total amount that SSA pays to each Class Member, and that if the Court approved the award, SSA would reduce any money paid to each Class Member by the percentage set by the Court. *See* Settlement Agreement, Ex. 1: Notice to Class, at 8.  In its motion for a fee award, Class

---

[7] These cases did not award fees pursuant to Section 406(b) of the Social Security Act, but instead awarded fees out of a common fund.  However, the Court considered the factors set forth above given the lack of judicial guidance on the calculation of attorney fees under the Social Security Act.

Counsel argued that the 25% requested fee "is reasonable in light of Class Counsel's highly capable prosecution of the Class Members' claims, the substantial relief afforded to Class Members under the terms of the Settlement Agreement and the considerable risks that Class Counsel originally undertook in deciding to file this class action lawsuit." Fee Application at 3. SSA responded that "it is difficult to conclude precisely what the appropriate percentage award should be, other than it should be at the twenty percent or lower level." SSA Resp. to Class Counsel's Fee Application (SSA Resp.) [Dkt. 42] () at 4-5.

After applying the factors set forth above, the Court concludes that a reasonable percentage for the fee award is 20% of the total amount that SSA pays to each Class Member for past-benefits because certain considerations weigh in favor of a small downward departure from the 25% requested. There is no evidence indicating that a 20% fee award would yield an unjustified windfall to Class Counsel, that the quality of representation was insufficient, or that the award of 20% is significantly disproportionate to the hours spent working on the case. *Gisbrecht*, 535 U.S. at 808.

With respect to the size of the fund created and the number of persons benefitted, Class Counsel argued in their fee application that the number of persons benefitted and the amount of recovery—approximately 1,100 persons and $20,000 each—militated in favor of a 25% award.[8] The Court agrees that the size of the fund and persons benefitted is significant here

---

[8] SSA estimates that there are "somewhat more than" 1,000 Class Members who will potentially be entitled to reimbursements of roughly $22 million (approximately $20,000 per person). Fee Application, Ex. C (SSA Memorandum) [Dkt. 41-3]. Those figures are subject to a few caveats, including that "[a]ctual reimbursements will fall short of potential reimbursements to the extent that (a) individuals do not avail themselves of the settlement or (b) publicity efforts fail to reach those class members who cannot readily be identified as such from SSA's records." *Id.* at 1, n.2. Additionally, "the assumptions underlying [SSA's] adjustment for additional pensions subject to WEP were, in particular, subject to considerable uncertainty," and therefore the estimate of $22 million "could be more or less by a few million dollars." *Id.* at 2.

so as to warrant a higher fee award.  *See In re Vitamins Antitrust Litig.*, No. Misc. 99-197 (TFH), 2001 WL 34312839, at *11 (D.D.C. July 16, 2001) ("Courts have regarded exceptional benefits to a large class as grounds for a higher fee award."); *In re Baan Co. Secs. Litig.*, 288 F. Supp. 2d 14, 17 (D.D.C. 2003) (same).  However, as noted by SSA, the number of class member who may opt out and the number who will end up receiving benefits is not known with certainty at this time.  SSA Resp. at 2.[9]

There is no doubt that Class Counsel were skilled and efficient representatives. Class Counsel had worked approximately 1,600 hours on this case at the time the fee application was filed.  Fee Application at 28.  Thus, "[t]aking the conservative estimate that $22,000,000 will be paid in back-due benefits, the contingent fee [of 25% as requested by Class Counsel] would be $5,500,000, far in excess of the dollar value of the time Class Counsel have so far spent on the case (more than $3,000 per hour)."  SSA Resp. at 2.[10]  As set forth by *Gisbrecht*, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order."  *Gisbrecht*, 535 U.S. at 808.  Accordingly, the Court finds this factor counsels in favor of setting a more appropriate 20% fee award.[11]

---

[9] Class Counsel argues that the uncertainty is a factor that should militate in favor of a higher award, given that many individuals may opt out or may never seek to obtain relief.  Pl. Reply [Dkt. 46] at 3-4.  But, as noted above, in the 10 weeks since receiving notice, 30% of the listed potential Class Members have responded and individuals have until June 2017 to respond.  Only 63 people have submitted opt-out forms.

[10] At the Fairness Hearing, Class Counsel indicated that the number of hours worked was approximately 1,800.

[11] The Court credits Class Counsel's argument that their work is ongoing because they still have to answer questions about the Settlement Agreement until June 2017 and will audit SSA's calculations.  Pl. Reply at 4-5.  However, it ultimately finds that a 20% award is sufficient to adequately compensate Class Counsel.

In terms of the risk of non-payment, SSA argues that the risk borne by Class Counsel was not great here because SSA had already taken the position that "the favorable decision in Jerome Berger's case would be applied to other recipients of NII benefits who had had their Social Security benefits erroneously subjected to the WEP" and SSA agreed with Plaintiffs' position on the merits of this case soon after the filing of this action.  SSA Resp. at 4. However, as pointed out by Class Counsel, there was still a legitimate risk given that SSA had arguably conceded the merits of Plaintiffs' claim once before, in response to the *Berger* litigation, but still failed to change its practices.  *See* Fee Application at 26-27.  Additionally:

> Defendants had two strong defenses that potentially could have led to dismissal of the Complaint, let alone weighed against the certification of a class action here: First, there was an exhaustion of remedies issue with regard to those claimants (including Mr. Greenberg) who had not pursued their full administrative remedies at the agency level (*i.e.*, a request for reconsideration of their benefits determination, and an appeal to the SSA Appeals Council from a denial of their request for reconsideration).  Second, there was a statute of limitations issue with respect to those potential class claimants who failed to challenge the application of WEP within sixty (60) days.

Fee Application at 24.  Finally, there are always potential obstacles that can delay or derail a settlement in a contingency fee case, including the facts that neither class certification nor approval of the settlement by the Department of Justice were guaranteed.  Still, the Court recognizes that the risk of non-payment here was not as great as in other cases involving contingency fees, as demonstrated by the parties' provisional agreement to file a stipulation of settlement within very short order after the filing of the Complaint.  As noted at the Fairness Hearing, although much hard work went into negotiating and executing the Settlement Agreement, this was not a hard-fought legal battle.  Thus, the lesser risk supports a fee award of 20%.

With respect to the objections by class members, only nine class members filed objections with the Court objecting to the fees requested by counsel. *See* Dkts. 44, 47, 49, 50, 51, 53, 54, 55. Some objected to the fact attorney fees will be deducted from Plaintiffs' past benefits instead of holding SSA responsible for the fees. *See*, *e.g.*, Letter to the Court [Dkt. 50] ("[W]e do not understand why the defendants in this case were not held liable for this payment [of attorney fees] to the lawyers. We have heard that, in other cases, the lawyers request court fees to be paid by the defendants.").[12] At the Fairness Hearing, the Court read into the record a letter from Ms. Arlene Cohen [Dkt. 51], a 72-year old woman who has lived in Israel since 1976, and became disabled in 1990. Ms. Cohen stated:

> Today, I receive $396/mo, and have no idea how much I'm entitled to without WEP. For this reason, I have no way of knowing to what degree my life might have been different for the past 11 years had I received my full benefits.
>
> However, I can state unequivocally that when you are struggle to cope with overwhelming financial hardship on a daily basis—when you cannot afford a jar of mayonnaise, when a newspaper becomes a "luxury" item, when you cannot pay for all the medicines you need or don't have the taxi fare to get to an important medical test—**every penny counts**. . . .
>
> Class Counsel is absolutely entitled to a fair and reasonable fee for their work and I have no objection to that—nor do I wish anything said here to detract from my genuine appreciation for what they have accomplished. . . .
>
> This settlement could have a *life-changing* impact on Class Members like me. I long to be able to use my airconditioner [sic] when I need it without agonizing all summer over how I'll pay the electric bills. I'd like to replace worn out pajamas without feeling

---

[12] As noted above, the Social Security Act specifically provides that "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S.C. § 406(b)(1)(A). Accordingly, Class Counsel is entitled to seek fees out of Plaintiffs' recovery of their past-due benefits.

guilty about spending money on myself.  I'd like to know there will
be something in the bank the next time a major appliance breaks
down and can no longer be repaired.  And at long last, I could afford
to have my caregiver a few more hours a week, as well.

My purpose in writing this letter is to put a face on the people who
stand to lose however much Class Counsel gains from each of us.
The difference is that Counsel will move on to other cases and other
gains.  We can never replace our loss.

Letter [Dkt. 51] (emphasis in original).  In consideration of the objections of Ms. Cohen and the

eight other objectors, the Court finds that a 20% fee is appropriate in this case.

Class Counsel argued that this case involved complex issues and that it should not

be penalized for achieving an effective settlement in a relatively short period of time.  Fee

Application at 23 (quoting *Radosti*, 760 F. Supp. 2d at 78).  But Counsel is not being "penalized"

by being awarded 20% instead of 25%; the Court simply finds in its discretion that 20% is a

more appropriate fee for the reasons set forth herein and at the Fairness Hearing.

As for awards in similar cases, the Court does not place much weight on this

factor given the unique circumstances of this case.  *See Greenberg*, 2014 WL 3884181, at *7

(finding no precedents on question of whether counsel may seek fees under Section 406(b) in

class action lawsuit).  In its motion for a fee award, Class Counsel cites cases where several

million dollars in funds were distributed to the class and the percentages of fee awards ranged

between 25% and 33%.  Fee Application at 29-30.  However, attorney fees in those cases were

not capped at 25%, unlike fee awards available under the Social Security Act.  42 U.S.C.

§ 406(b).  And, in any event, a 20% award is in line with other attorney fee awards in common

fund class action lawsuits.  *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 39

(D.D.C. 2011) (noting that in majority of common fund class actions in this Circuit, attorney fee

awards fall between twenty and thirty percent of the fund) (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993).[13]

For these reasons, the Court deems 20% to be a reasonable fee.

### 3.  Expenses

Class Counsel do not seek an award for expenses at this time.  *See* Decl. of Ira Kasden [Dkt. 41-1] at 7.

## III.  CONCLUSION

For the reasons above, the Court granted the parties' request for final approval of class action settlement and entered the Settlement Agreement and Consent Judgment [Dkt. 56]. The Court also granted in part Class Counsel's Motion for Attorney Fees, and ordered that Class Counsel was entitled to attorney fees in the amount of 20% of each payment of past-due benefits made by SSA as a result of this class action case.  *See* Order [Dkt. 57].


Date: July 1, 2015

                                   _____/s/_____
                                   ROSEMARY M. COLLYER
                                   United States District Judge

---

[13] Class counsel also cites Social Security actions awarding 25% in fees under Section 406(b), Fee Application at 30, but those cases were not class actions and thus had significantly lower fee awards.